S05A0920. WILLIAMS et al. v. SCREVEN WOOD COMPANY, INC. et al.

(619 SE2d 641)

THOMPSON, Justice.

Screven Wood Company filed an action to quiet title to establish their ownership interest in the timber on an 89-acre tract of land located in Jenkins County, Georgia. The other plaintiffs, who sold the timber to Screven Wood, are the descendants of Jack Johnson and claim ownership in the entire 89-acre tract. Defendants, who are the descendants of Emma Johnson Jackson, Jack Johnson's sister, claim a one-half undivided interest in 56 of the 89 acres. The matter was assigned to a special master who found in favor of plaintiffs, awarding Screven Wood ownership in the timber on the entire 89-acre tract free and clear of defendants' claims, and awarding the remaining plaintiffs exclusive ownership in the underlying fee. The trial court adopted the findings and rulings of the special master and ordered that judgment be entered in favor of plaintiffs. Defendants appealed.

Franklin Johnson purchased the land in question in 1876, and when he died, he left it to his children and sole heirs, Jack Johnson, Ben Johnson, and Emma Johnson Jackson. In 1918, Jack Johnson purchased 33 acres adjacent to the 56-acre tract. Ben Johnson died in 1936, leaving no heirs. Jack Johnson died in 1961, and Emma Jackson died intestate in 1966.

Jack Johnson claimed ownership in the entire 89 acres from 1918 forward and, in 1954, conveyed it to his children for life and the remainder to their children in fee simple. During the period from 1918 until the present, Jack Johnson and his descendants paid the property taxes for the land, farmed the land, and leased portions of it, for which they collected rent.

In November 2002, Screven Wood purchased all the timber on the 89-acre tract from Jack Johnson's descendants. When Screven Wood began harvesting the timber in 2003, defendant Rufus Williams claimed an interest in the property and demanded the harvesting cease. Williams was appointed as temporary administrator for Emma Jackson's estate at that time.

At the hearing, Williams testified that he was aware Jack Johnson and his descendants occupied the 89-acre tract "like it was their own" and that they collected rent and paid all the taxes for it.

Williams further testified that before Emma Jackson's death in 1966, she visited a lawyer to discuss options for restoring her rights to the land, demonstrating that both she and her family were aware that Jack Johnson claimed the property adversely to her interests, but she never pursued any legal action.

1. Defendants assert the court erred when it found that plaintiffs, as tenants in common, acquired title through adverse possession when no actual ouster ever occurred. We disagree.

Plaintiffs are the heirs of Jack Johnson, and their possession commenced in 1954 when Jack Johnson deeded the 89 acres to his children and grandchildren. Defendants were cotenants of the 56-acre portion of the property because Emma Johnson Jackson, who had a one-half undivided interest in the land with her brother Jack, died intestate. Thus, plaintiffs and defendants were tenants in common. OCGA § 44-6-120.

A party who asserts a claim of title by adverse possession against a cotenant has the burden of proving not only the usual elements of prescription, but at least one of the elements of OCGA § 44-6-123, which provides as follows: "[t]here may be no adverse possession against a cotenant until the adverse possessor effects an actual ouster, retains exclusive possession after demand, or gives his cotenant express notice of adverse possession." *Ponder v. Ponder*, 275 Ga. 616, 618 (1) (571 SE2d 343) (2002) (quoting *Wright v. Wright*, 270 Ga. 530, 532 (512 SE2d 618) (1999)).

A cotenant's mere occupation of more than his share of the property is not adverse, but is in common with the other cotenant until it appears otherwise. *Wright*, supra at 532. Thus, to constitute adverse possession, a notorious or unequivocal act, which indicates an intention to hold the property adversely, or an actual ouster must occur. See *Hardin v. Council*, 200 Ga. 822 (1) (38 SE2d 549) (1946). Exclusive possession of property by one cotenant does not ordinarily give that cotenant sole title because each cotenant has a right to possession. See *Wright*, supra. To prove ouster, a tenant in possession must show acts inconsistent with, and exclusive of, the rights of the cotenant not in possession, and that cotenant must have actual or constructive knowledge of those acts. See *Chambers v. Schall*, 209 Ga. 18 (70 SE2d 463) (1952). Further, the acts of the tenant in possession must be in renunciation of the cotenancy, and notice of the repudiation must be unmistakable and clear. See *Chambers*, supra. A conclusion of prescriptive title may be drawn where unequivocal acts such as a leasing of all or part of the common property has occurred. *Wright*, supra.

The element of express notice may be satisfied by showing either that actual notice by the adverse party was demonstrated to the non-possessory cotenant or that there were unequivocal acts, open

and public, which made the possessors' occupation so visible, hostile, and notorious as to presume notice to the non-possessor. *Wright*, supra at 533.

The trial court properly concluded that plaintiffs and their predecessors in title committed such open and public acts as to put Emma Jackson and defendants on notice as to plaintiffs' adverse possession pursuant to OCGA § 44-6-123. The evidence demonstrates that, at least since Emma Jackson's death in 1966 if not before, defendants were aware that plaintiffs held the 56 acres adversely to defendants' interests. Williams testified that Emma Jackson sought legal advice regarding her brother's adverse possession of the land but never took any legal action. Due to defendants' notice of the nature of plaintiffs' possession, defendants were under an obligation to assert their rights to the 56-acre tract or lose them. Because they failed to do so in the prescribed time, plaintiffs established prescriptive title in the land.

2. Defendants also assert that the trial court erroneously relied upon the hearsay testimony of Rufus Williams. Williams testified that he knew Jack Johnson and his descendants utilized the 56-acre tract and possessed it adversely to the interests of his grandmother, Emma Jackson, and her family. Williams admitted that plaintiffs paid taxes on the land and leased it, collecting rent for their personal use. He also testified that Emma Jackson visited an attorney regarding Jack Johnson's possession but never followed through with any legal measures. Williams' testimony indicates that it was based upon his personal knowledge and that it was not hearsay. See generally *Crawley v. Selby*, 208 Ga. 530, 536 (67 SE2d 775) (1951).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 19, 2005.

*Susan A. Welch*, for appellants.
*R. Hubert Reeves III*, for appellees.